E-filed 11/18/2016

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIM LANGELL, et al.,

    Plaintiffs,

v.

IDEAL HOMES LLC, et al.,

    Defendants.

Case No.16-cv-00821-HRL

**ORDER REASSIGNING CASE TO A DISTRICT COURT JUDGE**

**REPORT AND RECOMMENDATION RE GRANTING MOTION TO COMPEL ARBITRATION**

Dkt. No. 36

Plaintiffs Jim and Rhonda Langell ("Plaintiffs") allege that defendant Ideal Homes, LLC ("Ideal") sold them a defective manufactured home constructed and warranted by defendant CMH Manufacturing West, Inc. dba Karsten Homes ("CMH"). Plaintiffs sue Ideal for breach of contract and both defendants for breach of warranty and negligence. Dkt. No. 1, at 16, 17, 27.

The warranty issued by CMH includes an arbitration provision, as does the contract governing the relationship between CMH and Ideal.[1] Dkt. No. 36, Lemley Decl., Ex. A, at 5. CMH, based on the two arbitration provisions, moves to compel arbitration of each claim against each defendant. Dkt. No. 36. The Court recommends GRANTING the motion for the following reasons.

**BACKGROUND**

Plaintiffs allege that they purchased a defective manufactured home from dealer Ideal in September 2014. Dkt. No. 1, Ex. A. After discovering defects upon taking possession of the

---

[1] The contract is actually between CMH and another entity named "MYIdeal Homes." Addendum B to the contract, however, states that "MYIdeal Homes" does business as Ideal Homes, so the court treats them as the same entity. Dkt. No. 36, Lemley Decl., Ex. A, at 7.

home several months later, Plaintiffs notified Ideal of the problems during a walkthrough and reported the same to both defendants in writing. *Id.* Plaintiffs assert that, "[a]t the time of the purchase of the home, [defendants] . . . represented to Plaintiffs in a writing entitled 'Warranties on New Manufactured Homes' that the subject new home was 'free from any substantial defects in materials or workmanship.'" Dkt. No. 1, Ex. A. Plaintiffs also claim that they have been in touch with CMH Warranty Service Representatives. But at the time Plaintiffs filed their complaint in state court one year later, repairs to address the defects allegedly still had not been completed. *Id.*

CMH removed this case to federal court in February 2016 and filed a motion to compel arbitration in July. Dkt. Nos. 1, 36. CMH asserts that two separate agreements each compel arbitration in this case. Dkt. No. 36, at 1-3. First, CMH cites its "Retailer Sales and Service Agreement" with Ideal, which contains the following provision: "[a]ny controversy or claim arising out of or relating to this Agreement, or any breach hereof, . . . shall be submitted to arbitration . . . ." Dkt. No. 36, Lemley Decl., Ex. A. Second, CMH states that Plaintiffs received a "Warranty and Arbitration Agreement" in their Homeowner's Manual, which provides: "[a]ny dispute or claim relating to your home, including those relating to warranties, service work, design, manufacturing or construction, whether based in contract, tort or otherwise, at the request of you or CMH shall be resolved by BINDING ARBITRATION . . . . Any right to a trial by jury of any dispute . . . is expressly and irrevocably waived." Dkt. No. 36, Lemley Decl., Ex. B.

Plaintiffs claim that they received the Homeowner's Manual in a packet with multiple other documents and that they were not aware of its nature until an inspector requested to look at it months later. Dkt. No. 41, Langell Decl., ¶¶ 3-5. Even then, Plaintiffs state that they did not read it and were not aware of the arbitration provision. *Id.* Plaintiffs claim that, "[a]t no time prior to our filing this action did anyone involved in the purchase or repairs of the dwelling at issue in this case . . . indicate that there was an applicable arbitration clause, or that I needed to refer to a written warranty, or even that a written warranty existed." *Id.* at ¶ 2.

These statements, however, conflict with the declaration of Neil Porsch, the salesperson who sold the house. Porsch states that he provided Plaintiffs with a warranty pamphlet from CMH in September 2014. Dkt. No. 53, Porsch Decl., ¶ 3. Attached to his declaration, Porsch included

an "Addendum to Purchase Agreement," signed by Plaintiffs, in which they initialed next to a line acknowledging that they had "receiv[ed] a copy of the One & Ten year Limited Warranty for Karsten homes." Dkt. No. 53, Porsch Decl., Ex. A. The warranty documents that Porsch attached as exhibits to his declaration include arbitration provisions. Dkt. No. 53, Porsch Decl., Exs. C, D.

This case has been plagued by a certain amount of confusion regarding the identity of defendant Ideal. In their complaint, Plaintiffs named Ideal Homes, LLC as a defendant. Dkt. No. 1. Ideal Homes, LLC, however, is a suspended entity. Dkt. No. 64, Ex. B. Though Ideal Homes, LLC did not answer the complaint and still has not appeared, an entity with overlapping ownership named SAR Ideal Ventures, LLC answered the complaint as "Ideal Homes dba SAR Ideal Ventures, LLC," claiming that it was the proper defendant and that Ideal Homes, LLC was erroneously named. Dkt. No. 10. It later emerged that SAR Ideal Ventures, LLC was an entirely separate entity from Ideal Homes, LLC and that Ideal Homes, LLC was *not* erroneously sued. Dkt. Nos. 63, 64. SAR Ideal Ventures, LLC moved to withdraw its answer, a motion which the Court granted as unopposed. Dkt. Nos. 63, 70. The upside of all of this is that Ideal Homes, LLC has never appeared in this action, and thus has not consented to magistrate judge jurisdiction.

## DISCUSSION

### 1. Magistrate Judge Authority to Decide the Present Motion to Compel Arbitration

When a magistrate judge lacks consent from all parties to a suit, he or she lacks authority to issue orders on dispositive motions, but instead must make recommendations on such motions to district court judges. *Dist. Council 16 Int'l Union of Painters & Allied Trades, Painters Local No. 3 v. LML Enters., Inc.* [hereinafter "*District Council 16*"], No. 13-cv-00565-NC, 2013 WL 3802837, at *2 (N.D. Cal. June 14, 2013). Though 28 U.S.C. Section 636(b)(1)(A) lists a number of dispositive motions, its enumeration is not exclusive and does not expressly include motions to compel arbitration. In the Ninth Circuit, to determine whether an unlisted motion is dispositive, the court adopts "a functional approach that look[s] to the effect of the motion, in order to determine whether it is properly characterized as 'dispositive or non-dispositive of a claim or defense of a party.'" *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) (quoting *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004)) (internal quotation marks omitted).

3

1    The Ninth Circuit has not considered whether a motion to compel arbitration is a
2  dispositive motion. *District Council 16*, 2013 WL 3802837, at *2. District courts are divided on
3  the question. *Martin v. Wells Fargo Bank*, No. CV 12-06030 SI, 2013 WL 5441973, at *2 (N.D.
4  Cal. Sep. 30, 2013) (discussing the divisions). For example, the Eastern District of Michigan
5  found a motion to compel arbitration dispositive because "the effect of the magistrate judge's
6  order is to terminate litigation in this Court and transfer the case to another forum for a
7  determination of the merits." *Flanner v. Tri-State Div.*, 402 F. Supp. 2d 819, 821 (E.D. Mich.
8  2005). But the Western District of New York concluded that a motion to compel arbitration was
9  *not* dispositive because "the FAA provides that there is no final exercise of Article III power until
10 after the arbitration is complete and the arbitrator's decision is either affirmed, modified, or
11 vacated by the district court judge where the action remains lodged." *Herko v. Metropolitan Life*
12 *Ins. Co.*, 978 F. Supp. 141, 142 n.1 (W.D.N.Y. 1997).
13   In two cases, magistrate judges in the Northern District have determined that motions to
14 compel arbitration are dispositive. In *Amisil Holdings Ltd. v. Clarium Capital Management*, the
15 magistrate judge issued a report and recommendation on a motion to compel arbitration out of an
16 abundance of caution after discussing the split in the district courts. 622 F. Supp. 2d 825, 827 n.1
17 (N.D. Cal. 2007). The magistrate judge provided a more complete discussion and determination
18 in *District Council 16*. 2013 WL 3802837, at *3. In that case, the plaintiff moved to compel
19 arbitration, and the defendant had failed to appear (and thus to consent to magistrate jurisdiction).
20 *Id.* at *1.
21   In concluding that a motion to compel arbitration was dispositive, the magistrate judge first
22 analyzed its effect. Such a motion, if granted, technically leaves the district court with authority to
23 vacate an arbitration award. But the magistrate judge questioned whether this authority,
24 considering the limited scope of review, was sufficient to make the motion non-dispositive. *Id.* at
25 *2. The district courts, he noted, must confirm arbitration awards unless there is an "egregious
26 departure" from the agreed-upon arbitration, and district courts generally do not review the merits
27 of arbitration decisions. *Id.* In light of the district court's limited role in reviewing arbitration
28 awards, the magistrate judge found the test asking whether a motion resolves the merits of a

4

dispute incomplete as a means of determining whether a motion to compel is dispositive, and so he sought guidance from courts' rulings on analogous motions.

The magistrate judge compared a motion to compel arbitration to a motion to remand to state court, stating that both motions seek a different forum. *Id.* at *3. He then noted that every circuit to speak on the issue of whether a motion to remand—which in 2013 did not include the Ninth—had concluded that a motion to remand was dispositive. *Id.* at *3. The Ninth Circuit joined its fellow circuits in 2015, holding that a motion to remand is dispositive because it "preclusively determines the important point that there will not be a federal forum available to entertain a particular dispute." *Flam v. Flam*, 788 F.3d 1043, 1047 (quoting *In re US Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998)). Having correctly predicted the Ninth Circuit's decision on a motion to remand, the magistrate judge then concluded that a motion to compel arbitration is dispositive because it has a similar effect. *District Council 16*, at *3. He explained:

> The practical effect of granting a motion to compel arbitration is to transfer the action to a different forum for resolution of the merits of the dispute. Although the federal courts retain some jurisdiction to review the propriety of arbitration awards, at base, a motion to compel arbitration is much like a motion to remand or even a motion to dismiss for improper venue.

*Id.* On this basis, the magistrate judge issued a report and recommendation rather than an order disposing of the motion to compel, recommending that the district court grant the motion to compel and dismiss the case because all of the claims would be sent to arbitration. *Id.* at *3, *5.

The court here adopts the magistrate judge's reasoning and conclusions in *District Council 16*. Though *Flam v. Flam* arguably leaves room for the Ninth Circuit to distinguish a motion to compel arbitration—in which the court retains authority to review the arbitral award—from a motion to remand, such an argument ignores the fact that the district court's review of an arbitration award is limited, and an order compelling arbitration effectively shifts the decision on the merits to another forum. In light of the Ninth Circuit's emphasis on evaluating the functional effect of a motion, the court concludes that a motion to compel arbitration is dispositive.

As a result, since the court does not have the consent of Ideal Homes, LLC, which has not yet appeared, the court presents its conclusions as a report and recommendation to a district court

5

judge.

## 2. The Present Motion to Compel Arbitration

Arbitration agreements are generally "valid, irrevocable, and enforceable," 9 U.S.C. § 2, but "arbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), and state contract law governs whether an arbitration agreement has been formed and whether any such agreement should be invalidated, *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). A court ordinarily resolves a motion to compel arbitration by determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of establishing that a valid agreement to arbitrate exists by a preponderance of the evidence. *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Evidence may be submitted in the form of affidavits, declarations, or oral testimony. *Hotels Nevada v. L.A. Pacific Ctr., Inc.*, 144 Cal. App. 4th 754, 758 (2006). The parties agree California law governs the arbitration provisions here.

In arguing that no valid arbitration agreement exists between the parties, Plaintiffs primarily dispute whether they provided mutual assent to the terms of the arbitration provision in the warranty.[2] Dkt. No. 38 at 3-4. Plaintiffs argue that they had no "actual or constructive" notice of that arbitration provision prior to purchase, and that they only learned of it upon filing this suit. *Id.* at 4; Dkt. No. 51, Langell Decl., at ¶¶ 8-9. Plaintiffs also argue (1) they did not consent to waive their right to a jury trial; (2) CMH waived any right to compel arbitration by litigating for more than six months before filing its motion; and (3) Plaintiffs could not, in any event, be compelled by the arbitration provision in the CMH warranty to arbitrate their claims against Ideal.

---

[2] Contract formation under California law requires the "[m]utual assent" of the parties, and a party may manifest assent through "written or spoken words[] or by conduct." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). A court reviews "the outward manifestations of consent" to determine whether "a reasonable person" would believe consent was given. *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976).

1  *Id.* at 4-6.  CMH replies: (1) Plaintiffs provided mutual assent when they "intentionally availed

2  themselves of the benefits" of the warranty and are estopped from denying its existence, Dkt. No.

3  43 at 2, and (2) CMH "has not waived its right to arbitration" because only minor procedural

4  events occurred before CMH filed its motion to compel, *id.* at 5.

5        "Non-signatories of arbitration agreements may be bound by the agreement under ordinary

6  contract and agency principles."  *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th

7  Cir. 1986).  These principles include "1) incorporation by reference; 2) assumption; 3) agency; 4)

8  veil-piercing/alter ego; and 5) estoppel."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.

9  2006).  Equitable estoppel applies when a non-signatory to an arbitration agreement "knowingly

10  exploits" that agreement.  *Id.*  The doctrine precludes parties from claiming the benefits of

11  contracts while simultaneously avoiding the burdens.  *Id.*

12        In *Comer v. Micor, Inc.*, the court held that estoppel could not bind a non-signatory to

13  arbitration where that party did not knowingly exploit the agreement containing the arbitration

14  clause.  *Id.* at 1102.  The non-signatory, an ERISA-plan participant, sued the managers of the plan

15  for breach of fiduciary duty.  *Id.* at 1100.  The managers, who had an agreement with the plan's

16  trustees containing an arbitration provision, argued that the non-signatory should be precluded

17  from avoiding the burdens of the agreement (arbitration) because he was seeking to enjoy its

18  benefits (a well-managed plan).  *Id.* at 1101.  The court disagreed.  It held that the non-signatory,

19  who neither sought to enforce the terms of the management agreement nor sued under its

20  provisions, did not knowingly exploit that agreement and could not be estopped from avoiding

21  arbitration.  *Id.* at 1102.

22        The present case is distinguishable.  Here, unlike in *Comer*, Plaintiffs sought to take

23  advantage of the terms of the warranty agreement by requesting warranty services from CMH.

24  Additionally, in this action, Plaintiffs seek to recover based on a warranty CMH and Ideal

25  provided to them. Plaintiffs' second claim, for breach of warranty, alleges and seeks damages for

26  the breach of an express written warranty.  *See* Dkt. No. 1, Ex. A, at ¶¶ 37, 50, 54, 67, 68.

27  Plaintiffs' request for warranty services and attempt to sue for breach of an express warranty

28  would be enough to confirm Plaintiffs' knowing exploitation of the warranty agreement (such that

7

they would be estopped from denying its existence) *if* the court were persuaded of one additional fact: whether Plaintiffs had sufficient notice of the agreement to exploit its terms.

Here, the evidence establishes that Plaintiffs had notice of the warranty agreement, and that they are thus estopped from avoiding arbitration.[3] Attached to the declaration of Neil Porsch, the salesperson who sold the manufactured home to Plaintiffs, is an addendum to the purchase order. The addendum is signed by Porsch and Plaintiffs, and the signatures and dates match those of the purchase order attached to Plaintiffs' complaint. Porsch Decl., Ex. A; *see also Aguilar v. BLH Constr. Co.*, No. B198468, 2007 WL 4418105, at *2 (Cal. Ct. App. Dec. 19, 2007), citing *People v. Rodriguez*, 133 Cal. App. 4th 545, 554 ("[a] trial court sitting as [the] trier of fact can compare [a] signature with [an] exemplar to determine whether [the] signature was a forgery"). The addendum shows that Plaintiffs initialed next to the following statement: "Buyer acknowledges receiving a copy of the One & Ten year Limited Warranty for Karsten Homes." Porsch Decl., Ex. A. Even if Plaintiffs did not read the warranty (which contains an arbitration provision), this evidence contradicts the statement in Plaintiffs' declaration that they were not aware of the existence of any written warranty.[4] Dkt. No. 51, Langell Decl., ¶ 2. The purchase order itself also references a warranty, noting, in all capital letters, "YOU ARE ENTITLED TO . . . A COPY OF THE WARRANTY." Dkt. No. 1, Ex. 1 to Ex. A. Plaintiffs' signatures on these documents persuade the court that they had sufficient notice of the warranty agreement to knowingly exploit it, even if they were not aware of all of its terms. *See Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049-1050 (2001) ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing[,]" except under circumstances not applicable here).

The case Plaintiffs cite to support their argument that no valid arbitration agreement exists is not controlling here. In *Knutson v. Sirius XM Radio*, the court held an arbitration agreement

---

[3] As stated above, the party seeking to compel arbitration bears the burden of demonstrating that a valid agreement to arbitrate exists by a preponderance of the evidence. Evidence may come in the form of affidavits, declarations, or oral testimony. *Hotels Nevada v. L.A. Pacific Center, Inc.*, 144 Cal. App. 4th 754, 758, 762 (2006).

[4] Though it is irrelevant for evidentiary purposes, this statement is also contradicted by Plaintiffs' complaint. *See* Dkt. No. 1, Ex. A, at ¶¶ 37, 50, 54, 67, 68.

8

1  unenforceable where the plaintiff's purchase of a product from one company did not constitute
2  assent to an arbitration-forcing contract for services with a separate company. 771 F.3d 559, 566
3  (9th Cir. 2014). The facts were as follows: Knutson purchased a vehicle from Toyota that
4  included a free 90-day trial subscription to Sirius XM Radio, and Sirius sent Knutson a Welcome
5  Kit containing an arbitration agreement. *Id.* at 562. Sirius sought to compel arbitration in a
6  subsequent dispute. *Id.* The court held the arbitration agreement unenforceable because no valid
7  agreement to arbitrate existed between the parties. *Id.* at 565. Noting that "[a]n offeree . . . is not
8  bound by inconspicuous contractual provisions of which he was unaware, contained in a document
9  whose contractual nature is not obvious," *Id.* at 566 (quoting *Windsor Mills, Inc. v. Collins &
10 Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972)), the court concluded that a reasonable person in
11 Knutson's position would not have understood that he assented to a contract with Sirius by
12 purchasing a car from Toyota, *id*.

13     In the present dispute, key facts differ from those in *Knutson*. First, the arbitration
14 agreement and the services sought by the plaintiffs both related to the product that the plaintiffs
15 purchased from the seller—the manufactured home. In *Knutson*, two different products and
16 services were involved. Second, the plaintiffs here signed a purchase agreement that referenced a
17 warranty and initialed an addendum to that agreement acknowledging their receipt of a written
18 warranty. In *Knutson*, the plaintiff did not have notice that he was in a contractual relationship
19 with Sirius XM.

20     Rather than *Knutson*, a Southern District of California case discussing *Knutson* is more
21 apposite here. *Robinson v. Onstar, LLC*, like *Knutson*, involved a contract with a company
22 providing trial services ancillary to the purchase of a vehicle (in *Robinson*, OnStar navigation
23 assistance). No. 15-cv-1731-WQH-BGS, 2016 WL 4493733, at *2 (S.D. Cal. Aug. 25, 2016),
24 *appeal docketed*, No. 16-56412 (9th Cir. Sep. 27, 2016). In *Robinson*, however, the plaintiff
25 signed an "OnStar Acknowledgment form" stating that she had received the OnStar Terms and
26 Conditions (which contained an arbitration provision), though she testified that she did not read
27 them. *Id.* at *2-3. After determining based on the evidence that the plaintiff had received a copy
28 of the Terms and Conditions, the court held that the plaintiff accepted OnStar's offer to contract

9

by taking advantage of its services and granted the defendant's motion to compel arbitration. *Id.* at *4-5.

The facts here—where Plaintiffs acknowledged receiving a copy of the document containing the arbitration agreement and took advantage of the defendants' services—are more similar to *OnStar* than to *Knutson*. The court determines that Plaintiffs are estopped from denying the existence of the arbitration agreement in the Homeowner's Manual.

In addition to challenging the validity of the arbitration agreement, Plaintiffs also challenge the validity of the jury waiver, arguing that they had no agreement with CMH and no opportunity to review the jury waiver provisions. But both of these arguments have been addressed above with respect to the arbitration provision, and the court's resolution of these issues applies equally to the jury waiver. Additionally, the latter provision is included in bold type in the Homeowners' Manual, and its wording is clear and unambiguous: "Any right to trial by jury of any dispute, claim, or controversy . . . is expressly and irrevocably waived." Dkt. No. 36, Lemley Decl., Ex. B, at 36; *see Miller v. Bock Evans Fin. Counsel, Ltd.*, 114 F. Supp. 3d 871, 877 (N.D. Cal. 2015) (waiver should be "clear and unmistakable"). The court is not persuaded by Plaintiffs' arguments regarding jury waiver.[5]

Finally, CMH has not waived its right to compel arbitration by litigating. In determining whether waiver to compel arbitration has occurred, courts apply the factors discussed in *Saint Agnes Medical Center v. Pacificare of California*. 31 Cal. 4th 1187, 1196 (2003). These factors include:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration

---

[5] The court also notes the state and federal authority questioning whether an inquiry into jury waiver is necessary if the parties have agreed to arbitrate. *See Dalton v. J. Mann Inc.*, No. 16-cv-03409-EMC, 2016 WL 5909710, at *4 (N.D. Cal., Oct. 11, 2016) (discussing *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004), and the proposition that parties agreeing to arbitrate have already opted out of the judicial forum, so the question of jury waiver is irrelevant); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 714 (1976) ("When parties agree to submit their disputes to arbitration they select a forum that is alternative to, and independent of the judicial—a forum in which, as they well know, disputes are not resolved by juries.").

> enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.'

*St. Agnes*, 31 Cal. 4th at 1196 (quoting *Sobremente v. Superior Court*, 61 Cal. App. 4th 980, 992 (1998)). Merely filing a lawsuit or removing to federal court does not constitute a substantial invocation of the litigation machinery, nor are such actions inconsistent with the right to arbitrate. *See id.* at 1200-01. Additionally, prejudice is typically only found when the party seeking to compel arbitration's actions have interfered with the public policy in favor of arbitration as an efficient means of resolving disputes, as occurs when parties take advantage of discovery unavailable in arbitration or wait until shortly before trial to seek arbitration. *Id.* at 1204. Here, CMH had only removed the case and filed a joint case management statement prior to filing its motion to compel arbitration. Plaintiffs and Ideal have not been prejudiced by delay.

The court is thus persuaded that CMH has not waived its right to arbitration, and that plaintiffs are estopped from denying the existence of the arbitration agreement. The sole issues that remain are whether the arbitration agreement covers the substance of the dispute between the plaintiffs and CMH, and whether the dispute between plaintiffs and Ideal is also bound to arbitration.

In determining the scope of arbitration agreements, courts consider the "strong federal policy favoring arbitration." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986). Any doubts "should generally be resolved in favor of arbitration." *Id.* at 1189.

Here, with respect to whether Plaintiffs' dispute with CMH falls under the arbitration provision, there are no doubts to resolve. The arbitration provision in the CMH warranty states: "Any dispute or claim relating to your home, including those relating to warranties, service work, design, manufacturing or construction, whether based in contract, tort or otherwise, at the request of you or CMH shall be resolved by BINDING ARBITRATION . . . ." Dkt. No. 36, Lemley Decl., Ex. B. The "relating to" language is broad, and Plaintiffs have alleged breach of warranty, defects in construction, and unsatisfactory service work. Plaintiffs' dispute with CMH falls

11

squarely under this provision.

As for whether CMH can compel Plaintiffs' claims against Ideal Homes into arbitration, Plaintiffs argue that it cannot, because there is no arbitration agreement between them and Ideal. CMH argues that it can nevertheless compel the claims against Ideal into arbitration because those claims are covered by the terms of the existing agreements between CMH and Ideal and between CMH and Plaintiffs.

The arbitration provision in the CMH-Ideal agreement states: "[a]ny controversy or claim arising out of or relating to this Agreement or any breach hereof . . . shall be submitted to arbitration . . . ." Dkt. No. 36, Lemley Decl., Ex. A, § 8. The agreement also assigns Ideal responsibility for repairing defects and for providing each homeowner with an orientation, "including instruction on . . . the obtaining of warranty service." *Id.* at § 1.4. Finally, the agreement states that "CMH has developed a comprehensive warranty program . . . and policies and procedures to be followed by Retailer in connection with the honoring of the warranties." *Id.* at § 2.2. The warranty document contained in the Homeowners' Manual also contains an arbitration provision (quoted earlier in this order). In addition, it includes various references to the division of warranty service responsibilities between the Retailer (Ideal) and the Manufacturer (CMH): "If a problem occurs which the Owner believes is covered by this warranty, the Owner should contact the Retailer from whom the home was purchased, provide the Retailer with a written description of the problem, and cooperate so that the problem can be resolved by the retailer. If the Retailer is unable to resolve a problem which the Owner is convinced is covered by the warranty, the Owner should contact the Manufacturer . . . ." Dkt. No. 36, Lemley Decl., Ex. B, at p. 29.

Plaintiffs are not signatories to the CMH-Ideal agreement. But as stated above, arbitration clauses may be enforced against non-signatories under ordinary contract and agency principles, including incorporation by reference, assumption, agency, veil-piercing, and estoppel. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).

Plaintiffs *did* sign the purchase order and the purchase order addendum, both of which reference the warranty provided by CMH. The court is persuaded that the arbitration agreement in

12

the warranty document—which Plaintiffs are estopped from denying, as described on previous pages—is broad enough to encompass Plaintiffs' claims against Ideal. The provision covers "[a]ny dispute or claim relating to your home . . . ." Dkt. No. 36, Lemley Decl., Ex. B. And it is situated in a larger warranty provision describing a close relationship between the retailer and the manufacturer and shared responsibilities for warranty services between the two. *See In re Apple & AT&TM Antitrust Litigation*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011) ("estoppel . . . flow[s] . . . from the conclusion that the relationship among the parties developed in a manner that made it unfair [for the party that refuses to arbitrate with a non-signatory] to claim that its agreement to arbitrate ran only to [the signatory] and not to [the non-signatory].").

The court is also persuaded that the agreement between CMH and Ideal incorporates the warranty document by reference. The agreement assigns Ideal responsibility for instructing purchasers about warranty services available from CMH and gives Ideal the initial responsibility for repairing defects. And its arbitration agreement broadly encompasses "[a]ny controversy or claim arising out of or relating to this Agreement." Dkt. No. 36, Lemley Decl., Ex. A. Courts may compel arbitration when two entities with a contractual relationship incorporate documents containing arbitration provisions by reference in their contract. *Turtle Ridge Media Grp., Inc. v. Pacific Bell Directory*, 140 Cal. App. 4th 828, 833-34 (2006) (compelling arbitration of a dispute between non-signatory sub-contractor and buyer when the subcontract incorporated by reference the main contract, which contained an arbitration provision); *Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1073 (2008) (noting that *Turtle Ridge*'s holding is based on incorporation by reference, even though the court discusses both incorporation by reference and estoppel).

In short, Plaintiffs can be compelled to arbitrate their disputes with CMH and Ideal because Plaintiffs are estopped from denying the broad arbitration agreement contained in the warranty document. Ideal can be compelled to arbitrate its disputes with Plaintiffs because the CMH-Ideal agreement also incorporates the warranty document by reference. Finally, though such considerations are not dispositive, the court notes that resolving the claims against Ideal and CMH in the same forum promotes the interests of judicial efficiency. The agreements between

CMH, Ideal, and Plaintiffs are so intertwined, and the issues so interdependent, that they should be resolved together.

Though Ideal has never appeared in this action, Scottsdale Insurance Company ("Scottsdale") has recently intervened pursuant to Rule 24 as the putative insurer for Ideal. Scottsdale was not a named party in this action, it is not named in any of the arbitration agreements, and it moved to intervene after the motion to compel arbitration was filed. In intervening to defend against the possibility of having to pay a default judgment against Ideal, Scottsdale seeks to assert the defenses that Ideal would assert if it were not a suspended entity.[6] If Scottsdale wants to benefit from presenting Ideal's defenses, it seems only logical and fair that it must also assume Ideal's burdens—specifically, the agreements to arbitrate discussed above. In any event, if Scottsdale is to succeed in asserting Ideal's defenses, it must be in the same forum as Ideal. The undersigned thus concludes that Scottsdale is required to join the arbitration along with Plaintiffs, CMH, and Ideal.

## CONCLUSION

As not all of the parties have consented to magistrate judge jurisdiction, the undersigned hereby ORDERS the Clerk to reassign this case to a district court judge and RECOMMENDS that the newly assigned judge GRANT the motion to compel arbitration and send intervenor Scottsdale to that forum, as well.[7] Any party may serve and file objections to this Report and Recommendation within fourteen days after being served. Fed. R. Civ. P. 72.

---

[6] The court expresses no opinion on the scope and breadth of the actions Scottsdale may take as an intervenor to protect its rights by asserting the rights of Ideal.

[7] In its order of November 17, 2016, granting Scottsdale's motion to intervene, the court stated that Scottsdale's proposed answer, "Dkt. No. 64, Ex. C," was deemed filed as of that date. Dkt. No. 70, at 8:1-2. The court did not consider Scottsdale's amended proposed answer at Docket Number 65, which included cross-claims against then-third-party-defendants Lazzco Painting and SAR Development Corp., entities which are no longer parties to this suit as a result of the court's granting SAR Development Corp.'s motion to strike the third-party complaint. The court thus reiterates that Scottsdale's proposed answer at Dkt. No. 64, Ex. C, is deemed filed as of November 17. Any further actions it chooses to take with respect to SAR Development and Lazzco Painting are up to Scottsdale.

Dated: 11/18/2016

_____
HOWARD R. LLOYD
United States Magistrate Judge